## APPEAL OF THE NATIONAL CONCRETE CO.

Docket No. 1018.  Submitted September 21, 1925.  Decided February 17, 1926.

The evidence herein fails to establish that amounts expended constituted ordinary and necessary business expenses.

*Russell T. McFall, Esq.*, for the taxpayer.
*B. H. Saunders, Esq.*, for the Commissioner.

### Before LOVE.

This is an appeal from the determination of deficiencies in income taxes for the years 1918, 1919, and 1920, in the aggregate amount of $4,641.09.

The taxpayer contends that the Commissioner erred in refusing to allow as deductions from gross income certain expense items.

### FINDINGS OF FACT.

The taxpayer is an Indiana corporation, with its principal office at Indianapolis. Its principal business during the taxable years in question consisted of the construction of public works, such as bridges, causeways, and the like, under contract with county and municipal governments.

In obtaining such contracts the taxpayer came in competition with other concerns engaged in the same business. It sometimes occurred that one of the primary features of a contest was the location of a bridge or the character of its structure—that is, whether it should be of concrete, iron, or wood. All such questions, or at least some of them, entered into the final popular vote on the determination of construction, *vel non*, and issuance of necessary bonds.

E. H. Lee was the president of the corporation. He was the politician in the business, and it was his duty to negotiate for and procure all contracts. In his efforts in this regard it became necessary to enter upon and prosecute a political campaign in the vicinity directly interested and in which the votes would be cast which would finally determine the issues. Such campaigns were always more or less expensive. In addition to printing and distributing appropriate literature, it was found necessary to the taxpayer's interest to engage the active assistance of influential people in the community, such as merchants and bankers, to popularize the plans and proposition submitted by the taxpayer. Those influential people would not put forth their best efforts without being remunerated for their time and effort. At the same time, in demanding and accepting such remuneration, they exacted a promise on the part of

Lee that he would not disclose the fact that they were being paid for their services, as such knowledge might affect their prestige in their respective communities. In deference to such promise, Lee declined to divulge to the Commissioner, and still declined at the hearing of this appeal, to divulge the names of the persons to whom he made payments in the manner above set out.

In paying the items hereinbefore described no checks were issued to the payees by the company, but Lee paid these amounts to such persons in cash. The company issued checks payable to Lee or the secretary of the company, and the cash proceeds of these checks were paid out as first indicated.

In its petition taxpayer alleged payments of the character under consideration as follows:

| | |
|---|---|
| In 1918 | $8,250 |
| In 1919 | 5,200 |
| In 1920 | 1,050 |

At the hearing the checks listed below were identified and introduced in evidence. Testimony was introduced identifying the proceeds of such checks as money paid by Lee to the persons and for the reasons above stated.

| Check No. | Date | Amount | |
|---|---|---|---|
| 4122 | June 7, 1918 | $1,000 | |
| 4206 | July 2, 1918 | 1,100 | |
| 4482 | August 24, 1918 | 300 | |
| 4922 | October 10, 1918 | 1,500 | |
| | | | $4,700 |
| 5756 | July 15, 1919 | 500 | |
| 8088 | October 14, 1919 | 2,020 | |
| | Chd. on books | 480 | |
| | Chd. on books | 750 | |
| 8370 | December 6, 1919 | 1,500 | |
| | | | 6,250 |
| | June 9, 1920 | 375 | |
| | August 12, 1920 | 750 | |
| | | | 1,125 |
| | | | 12,075 |

It was the settled practice of the taxpayer to pay its bills by check, naming the recipient as payee, with the exception of those issued for political or propaganda purposes, as hereinabove set forth. The Commissioner only disallowed such claims as were alleged to have been paid in cash and upon which the taxpayer failed or refused to furnish definite information as to the names of the recipients and the services performed.

DECISION.

The determination of the Commissioner is approved.

OPINION.

LOVE: The controversy arises over the refusal of the Commissioner to allow the items set forth in our findings of fact as deductions for

ordinary and necessary business expenses, under section 234 (a) (1) of the Revenue Act of 1918, which provides:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, * * *.

It has been evidenced that the Commissioner has allowed all deductions claimed where the recipient was known to have received the money expended. The taxpayer paid its bills and obligations by check, in which the recipient was named as payee, except in the transactions in controversy. In these transactions checks totaling $12,075 were issued to the president or secretary of the taxpayer as payee, and so far as the books of the taxpayer were concerned these officers were the recipients of the money. The taxpayer now claims these amounts were given in cash to the president, Lee, who disbursed it to persons unnamed in order to facilitate the obtaining of public contracts.

The divulging of the names is not sought by the Commissioner or the Board simply to gratify curiosity or to solve a mystery, but to properly authenticate the expenditures. By not furnishing sufficient evidence of the alleged expenditures, the taxpayer has failed in its proof of ordinary and necessary business expense; also, as is pointed out, the Commissioner is unable to check up or compute the income of the unknown persons alleged to have received this money, as the taxpayer has failed to comply with section 256 of the Revenue Act of 1918, the pertinent parts of which provide:

That all individuals, *corporations*, and partnerships, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, and employers, *making payment to another individual*, corporation, or partnership, of interest, rent, *salaries*, wages, premiums, annuities, *compensations*, *remunerations*, *emoluments*, or other fixed or determinable gains, profits, and income (other than payments described in sections 254 and 255), of $1,000 or more in any taxable year, or, in the case of such payments made by the United States, the officers or employees of the United States having information as to such payments and required to make returns in regard thereto by the regulations hereinafter provided for, *shall render a true and accurate return to the Commissioner*, under such regulations and in such form and manner and to such extent as may be prescribed by him with the approval of the Secretary, setting forth the amount of such gains, profits, and income, *and the name and address of the recipient of such payment*. (Italics ours.)

While it may be true that the taxpayer expended no money other than for strictly legal or legitimate purposes, the facts that the recipients were unwilling to have their names divulged, and that

the taxpayer declined and refused to divulge the names of the recipients or the specific amounts or purposes, bring the transactions under suspicion, which is strengthened by the fact that the alleged recipients feared that their standing and influence in their respective communities would be injured by a knowledge of their having received money under such conditions.

But, irrespective of any suspicion, and aside from any motive prompting taxpayer to withhold the specific information as to these payments, we need only to call attention to the inconsistent position of the taxpayer in invoking a section of a statute in its own behalf to sustain a claim for a deduction, while at the same instant he ignores another section of the same title of the same Act, and even at the moment of invoking the one he declines to comply with the other. As was aptly said by Mr. Justice Holmes in *Rock Island, Arkansas & Louisiana R. R. Co.* v. *United States*, 254 U. S. 141, 143, "Men must turn square corners when they deal with the Government."